MARK E. FERRARIO
Nevada Bar No. 1625
TYLER ANDREWS
Nevada Bar No. 9499
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
ferrariom@gtlaw.com
andrewst@gtlaw.com

*Counsel for Defendant Groupon, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS SKYDIVING ADVENTURES, LLC, a Nevada limited-liability company;<br><br>Plaintiff,<br><br>v.<br><br>GROUPON, INC., a Delaware corporation; DOES I through X, inclusive; ROE CORPORATION I,<br><br>Defendants. | Case No.:  2:22-cv-00047-RFB-BNW<br><br>**DEFENDANT GROUPON, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

Defendant, GROUPON, INC., ("Defendant" or "Groupon"), by and through its undersigned counsel, hereby submits its motion to dismiss the complaint filed by Plaintiff Las Vegas Skydiving Adventures, LLC. This motion is based upon the pleadings on file

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

herein, the attached memorandum of points and authorities, and any oral argument the Court may permit at the hearing of this matter.

DATED this 23rd day of February, 2022.

**GREENBERG TRAURIG, LLP**

/s/ Tyler R. Andrews
MARK E. FERRARIO
Nevada Bar No. 1625
TYLER ANDREWS
Nevada Bar No. 9499
*Counsel for Defendant Groupon, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff's complaint alleges that Groupon (an online marketplace through which merchants can offer discounts and deals on their goods and services to consumers) and a local blog called "Vegas Food and Fun" have somehow violated antitrust laws, the Lanham Act, and Nevada state law by virtue of Vegas Food and Fun's reviews of businesses and participation in a Groupon affiliate marketing program.   The flaws in the complaint are numerous and fatal, and this Court should dismiss the complaint in its entirety.

As an initial matter, the entire premise of Plaintiff's complaint is problematic. Vegas Food and Fun offers reviews of various businesses around Las Vegas.  It offers deals on some of these businesses by linking to Groupon or other websites.  There is nothing nefarious, let alone legally actionable, about such an arrangement.  Indeed, the idea of earning a commission on referred business is as old as business itself.  These types of referral programs are ubiquitous; a Google search for any major retailer or marketplace combined with "affiliate marketing program" is likely to yield a similar program.[1]

---

[1] For example, popular online marketplace Etsy invites potential "Etsy Affiliates" to "[e]arn a commission for every one-of-a-kind piece you discover and share,"  Kohls explains that "[b]y joining our affiliate program, you can start earning commissions on qualified sales you refer to Kohls.com," and Target suggests that you can "earn up to 8% when you promote your fave Target

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Moreover, Plaintiff has tried to assert antitrust claims against Groupon before and failed: the claims were swiftly dismissed with prejudice. This Court held that Plaintiff lacked antitrust standing because Plaintiff (which offers skydiving services directly to consumers) and Groupon (which offers discount vouchers for various businesses) are not competitors. Plaintiff's effort to resuscitate these claims is both fruitless and improper.

Further, Plaintiff's proposed new claims do nothing to rectify the fatal flaw in its antitrust theory: at bottom, far from exerting any type of undue control or monopoly over the Las Vegas skydiving market, if anything Groupon's existence only *increases competition* and ultimately *lowers the prices* for consumers – the precise opposite of the harm the antitrust laws are meant to address.

Finally, Plaintiff's new trademark and related causes of action hold no merit, and any holding for Plaintiff would represent a radical departure from well-settled law. The Lanham Act simply does not cover what Plaintiff imagines: it does not prohibit all use of a trademarked term in public discourse, and it certainly does not require a website to get permission from a trademark owner before providing information or reviews about brand-name goods and services. All of Plaintiff's trademark-related claims fail.

This Court should dismiss all of Plaintiff's claims in their entirety and with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff is a skydiving company based in southern Nevada. It alleges that it "offers services to individuals who wish to have the experience of jumping out of an airplane while tethered to an experienced parachutist, including the marketing and sale of such services, the provision of information regarding such services, the provision of ticketing and booking allowing consumers to access such services, and the actual provision of skydiving experiences." *See* Complaint, at ¶ 11. Plaintiff defines these as the "Relevant Services." *Id*. Groupon is alleged to "operate[] an online business providing customers with all

---

finds    with    our    Partners    Program."    *See*    https://www.etsy.com/affiliates; https://www.kohls.com/info/affiliate-program.shtml; https://partners.target.com/.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

ACTIVE 62704758v3

aspects of the Relevant Services by way of providing discount certificates that Groupon's customers may use with businesses that affiliate themselves with Groupon…(and share profits therewith) for the purpose of enabling Groupon to provide the Relevant Services." *Id*. at ¶ 18.  In other words, Groupon is a marketing company; it offers discount vouchers to consumers.

As laid out in detail in Groupon's motion for Rule 11 sanctions, this complaint is a doomed attempt at reviving dismissed claims from a lawsuit that has already been pending for more than three years.  As such, a brief background as to that lawsuit is warranted, as the events of that lawsuit bear directly on the claims here.

### A.   The Initial Lawsuit

The initial lawsuit arose out of an August 2018 Facebook comment on the "wall" of the Mesquite Airport's Facebook page.  In response to a posted question to Groupon by a user of the page (asking if Plaintiff was "on Groupon"), Groupon's customer service representative replied with a link that, when clicked, led to a dynamic search on the Groupon web platform for the term "skydive Fyrosity."  The resulting search page accurately displayed the message that there were "no matching deals" on Groupon, and provided clearly-labeled alternatives.  Based on this single incident, Plaintiff filed a lawsuit against Groupon in December of 2018, alleging various antitrust, trademark, and state law claims.  *See Las Vegas Skydiving Adventures, LLC v. Groupon, Inc.*, 2:18-cv-02342-APG-VCF (the "Initial Suit"), ECF No. 1.[2]

Pursuant to Groupon's motion, this Court dismissed the antitrust claims in October of 2019.  *See* Initial Suit, ECF No. 30.  Specifically, this Court held that Plaintiff lacked antitrust standing where Groupon and Plaintiff are not competitors in the market for tandem skydiving services.  *See id*., at 5.  The Court explained that:

---

[2] Groupon has filed a notice of related cases suggesting that this matter be heard by the same judges who are currently hearing the Initial Suit, given the substantial overlap between the issues in each case.  *See* ECF No. 6.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

4

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

LV Skydiving has not plausibly alleged that Groupon provides services that are interchangeable with other tandem skydiving service providers as required to be part of the same market. This is unlike the situation in *Bhan* where the services provided were interchangeable. Providing discount certificates to customers seeking tandem skydiving services is different (and a separate market) from providing tandem skydiving services. Tandem skydiving businesses in southern Nevada that allow Groupon to advertise their discounts compete in the same market as LV Skydiving. Because LV Skydiving and Groupon are not competitors in the allegedly restrained market, Groupon has not caused LV Skydiving antitrust injury under the Sherman Act. Consequently, I dismiss LV Skydiving's first and second causes of action with prejudice.

*Id*. The Court also expressed skepticism regarding the basis for Plaintiff's remaining trademark-related claims, but allowed them to proceed to discovery on the basis that certain fact issues were outside the scope of a true 12(b)(6) inquiry. *See id*., at 5-9.

On January 2, 2020, Plaintiff filed a motion for reconsideration of this Court's order dismissing the antitrust claims. *See* Initial Suit, ECF No. 34. After briefing, this Court denied the motion on July 6, 2020, again holding that Groupon cannot be liable for any antitrust injury where Groupon and Plaintiff are simply *not competitors* and do not offer interchangeable services:

Consumers could not go to Groupon alone for tandem skydiving services because Groupon's role is limited to providing online discount certificates. Because what Groupon offers is not reasonably interchangeable with what LV Skydiving offers, they are not competitors. *See Barton & Pittinos, Inc. v. SmithKline Beecham Corp*., 118 F.3d 178, 182-83 (3d Cir. 1997) (holding marketing company that participated in a program to supply vaccine to nursing homes was not a competitor of consultant pharmacists because without other members of the program, it could not supply vaccine).

In its motion for reconsideration, LV Skydiving has not argued that it can show Groupon provides the relevant services. And LV Skydiving has not argued it can allege a different market in which both parties compete.

*See* Initial Suit, ECF No. 55, at 3. As such, the only claims remaining in the Initial Suit are the trademark claims and the related state-law claims. In March of 2021, Groupon filed a motion for summary judgment as to those claims. *See* Initial Suit, ECF No. 91. That motion remains pending.

5

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

On October 15, 2021, close to two years after this Court dismissed Plaintiff's antitrust causes of action, eighteen months after the amendment of the pleadings deadline, nearly ten months after the close of discovery, and more than six months after Groupon filed its motion for summary judgment, Plaintiff sought leave to file a first amended complaint (ECF No. 108) and filed a second motion for reconsideration of this Court's October 23, 2019 order dismissing Plaintiff's antitrust claims (ECF No. 109). The motion for leave to amend the complaint was denied. *See* ECF No. 114. Judge Ferenbach held that amendment would be prejudicial to Groupon, given that nearly two years had passed since the amendment of the pleadings deadline, that discovery is long closed, and that a dispositive motion is pending. *Id*. at 4. Because the new facts and claims alleged arose out of different events, Judge Ferenbach did not reach the issue of whether Plaintiff's proposed amendments would be futile on the merits, and instead noted that "plaintiff may be able to pursue a different case." *Id*. The motion for reconsideration of the October 23, 2019 order remains pending.

## B. The Current Lawsuit

Plaintiff's new lawsuit – the instant matter – is based on different facts, although it alleges similar theories. However, it fares no better.

### 1. The Vegas Food and Fun Website

Plaintiff's claims in the current lawsuit are based on Groupon's alleged partnership with a website called "Vegas Food and Fun."[3] This very basic website appears to be a local blog that provides reviews and links to local Vegas activities, such as shows, restaurants, and things to do. *See* vegasfoodandfun.com. Plaintiff alleges that one such review page, titled "Las Vegas Skydiving," contains reviews of several different skydiving companies

---

[3] Available at www.vegasfoodandfun.com. This Court may take judicial notice of the website as it is referenced extensively in Plaintiff's proposed amended complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims.").

6

in Las Vegas, including Plaintiff (who does business under the name "Skydive Fyrosity"). *See* Compl., at ¶ 54; Plaintiff's Exhibit 4.  Plaintiff alleges that Groupon has entered into an agreement with the unknown entity controlling the website ("Roe Corporation and/or the Doe Defendants") pursuant to the Groupon Partner Agreement,[4] such that Vegas Food and Fun receives a portion of sales that are made by consumers who access Groupon deals through the Vegas Food and Fun website.  *See id.* at ¶¶ 47, 59.[5]

The Vegas Food and Fun website offers information and reviews of many Las Vegas attractions.  *See* www.vegasfoodandfun.com.  For example, on the "things to do" page it has a list of the "best pools in Vegas," with information about numerous hotel pools, and a list of "97 free things to do in Vegas."  *See* vegasfoodandfun.com/things-to-do-las-vegas/; vegasfoodandfun.com/best-pools-in-vegas/.  Plaintiff does not allege, nor could it, that Vegas Food and Fun provides skydiving services.

On the Vegas Food and Fun review page for skydiving services in Las Vegas – as with many pages on the Vegas Food and Fun website – there is a disclaimer stating that the page may contain affiliate links, and "[i]f you click through those links, you won't pay a penny more, but we'll get a small commission, which helps keep the lights on.  Thanks!" *See* vegasfoodandfun.com; Plaintiff's Exhibit 4.

Vegas Food and Fun reviews seven skydiving companies: Skydive Las Vegas, Sin City Skydiving, GoJump Las Vegas, Skydive Fyrosity (Plaintiff's business), Tandem Skydive Las Vegas, Vegas Indoor Skydiving, and SkyJump (an open-air jump at the Strat).[6]  *Id.*  The first three of these are followed by links to coupons offered on Groupon;

---

[4] Plaintiff claims to have attached the Groupon Partner Agreement to the complaint.  However, Plaintiff attached a different document, the Groupon Merchant Agreement.  The Groupon Partner Network Agreement is attached to Plaintiff's Motion for Leave to File Amended Complaint in the Initial Suit as Exhibit 3 (ECF No. 108-3).

[5] Plaintiff alleges that "profits and/or losses" are shared, but Plaintiff points to nothing in the Groupon Partner Agreement that supports the idea that affiliates receive anything more than a commission on sales; nothing indicates that Groupon's profits or losses are shared.  *See* Initial Suit, ECF No. 108-3.

[6] Plaintiff's Exhibit 4 omits Sin City Skydiving and Tandem Skydive Las Vegas.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

7

for example, "Get 50% Off Skydive Las Vegas."   Each review is positive and informational, including the review of Plaintiff's "Skydive Fyrosity" business.  *Id*.  The review page concludes with something to say about several of the companies:

> Overall, our winner for best skydiving is Skydive Las Vegas for their quality experience at a competitive price. For indoor skydiving, Vegas Indoor Skydiving takes the best award.
>
> GoJump Las Vegas is our choice for best tandem skydiving because they allow jumpers to control the parachute.
>
> The best skydiving views come from Skydive Fyrosity since you not only get to see stunning geographical features but also four states at once! They are also our choice for the best VIP experience because of their individualized jump times.
>
> Finally, if you're on a budget, our winner for the best budget-friendly skydiving experience in is Sin City Skydiving for offering a safe and quality experience at an affordable price.
>
> No matter which company you choose, skydiving in Las Vegas is an experience you'll remember forever!

*Id*.  No one company's name is bolded or in a distinct font.  *Id*.

### 2.      Plaintiff's Allegations

Based on these facts, Plaintiff alleges causes of action for trademark infringement of Plaintiff's FYROSITY trademark, antitrust claims for restraint of trade under 15 U.S.C. § 1 and monopolization under 15 U.S.C. § 2 (separate claims for exclusionary conduct and pricing); misappropriation of commercial properties under Nevada common law; and unjust enrichment under Nevada common law.  *See generally* ECF No. 1.

The trademark, misappropriation, and unjust enrichment claims rest upon the alleged use of the FYROSITY mark on the Vegas Food and Fun website without Plaintiff's permission.  The restraint of trade claim alleges that the Groupon Partner Agreement is a horizontal agreement in restraint of trade between two participants in the Market and thus a per se violation of the Sherman Act.  Plaintiff's alleged "Market" appears to be the

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1   provision of the "Relevant Services" to "residents of and visitors to southern Nevada who

2   wish to have the experience of jumping out of an airplane while tethered to an experienced

3   parachutist." *See id.* at ¶ 11–12.  The exclusionary conduct claim alleges that Groupon and

4   Vegas Food and Fun have worked together to establish and retain Groupon's monopoly on

5   the Relevant Services in the Market.  *Id*. at ¶ 101.  The pricing claim alleges that Groupon

6   and Vegas Food and Fun have artificially depressed prices of the Relevant Services in the

7   Market to drive out non-Groupon affiliates.  *Id*. at ¶ 111.

8        Because Plaintiff's claims are meritless, this Court should dismiss with prejudice.

9   **III.   ARGUMENT**

10       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

11   accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v.*

12   *Iqbal*, 556 U.S. 662, 678, (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

13   570 (2007).  Either a "lack of a cognizable legal theory" or "the absence of sufficient facts

14   alleged under a cognizable legal theory" are fatal to a complaint. *Balistreri v. Pacifica*

15   *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "[T]he court need not accept conclusory

16   allegations of law or unwarranted inferences, and dismissal is required if the facts are

17   insufficient to support a cognizable claim." *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

18   494 F.3d 788, 794 (9th Cir. 2007); *see also Twombly*, 550 U.S. at 555. In addition, the

19   "tenet that a court must accept as true" all allegations does not apply to legal conclusions,

20   as "[t]hreadbare recitals of the elements…supported by mere conclusory statements, do not

21   suffice," and the "mere possibility of misconduct" is insufficient. *Iqbal*, 556 U.S. 662, 679-

22   80 (emphasis added).  Moreover, "[w]here a complaint pleads facts that are 'merely

23   consistent with' a defendant's liability, it 'stops short of the line between *possibility* and

24   *plausibility* of 'entitlement to relief.'" *Id*. at 678 (quoting *Twombly*) (emphasis added).

25       As detailed herein, Plaintiff has failed to plead sufficient factual content to support

26   their purported bases of liability, and do not cross the line from probable to plausible.  As

27   such, this Court should dismiss Plaintiff's complaint in its entirety.

28   / / /

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

9

1

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

### A.   <u>Plaintiff's Antitrust Claims Should be Dismissed.</u>

Plaintiff's antitrust claims should be dismissed.  First, Plaintiff is precluded from bringing antitrust claims here, because this Court has already held that Plaintiff lacks antitrust standing where Groupon and Plaintiff are not competitors.  But even if this Court reaches the merits of the claims, the claims fail.

### 1.   Plaintiff's Antitrust Claims Must be Dismissed Because Plaintiff and Groupon are Not Competitors.

Plaintiff's antitrust claims must be dismissed because Plaintiff and Groupon are not competitors.  First, this Court has already ruled on this precise issue in the Initial Suit, so Plaintiff is precluded from relitigating this issue by the doctrine of issue preclusion. Second, even if issue preclusion did not apply, this Court should still dismiss the antitrust claims with prejudice where Plaintiff cannot show a key element of its antitrust claims: antitrust standing.

### a.   *Plaintiff's Antitrust Claims are Barred by Issue Preclusion.*

As an initial matter, Plaintiff is precluded from bringing antitrust claims here where this Court has already held that Plaintiff lacks antitrust standing.  Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *See Rimini St. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1192-93 (D. Nev. 2020), *quoting Howard v. City of Coos Bay*, 871 F.3d 1032, 1040-41 (9th Cir. 2017), The elements of issue preclusion require the party asserting it to demonstrate: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Id.*, *quoting Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012).  A dismissal with prejudice operates as a final judgment on the merits.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006) (a dismissal with prejudice is a determination on the merits); *Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, etc. v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (same).

*ACTIVE 62704758v3*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

This doctrine applies to bar re-litigation of the antitrust standing issue here.  This Court previously held that Plaintiff lacks antitrust standing *vis a vis* Groupon.  Specifically, the Court held that Plaintiff lacked antitrust standing where Groupon and Plaintiff are not competitors in the market for tandem skydiving services.  *See* Initial Suit, ECF No. 30, at 5.  The Court explained that:

> LV Skydiving has not plausibly alleged that Groupon provides services that are interchangeable with other tandem skydiving service providers as required to be part of the same market. This is unlike the situation in *Bhan* where the services provided were interchangeable.  Providing discount certificates to customers seeking tandem skydiving services is different (and a separate market) from providing tandem skydiving services. Tandem skydiving businesses in southern Nevada that allow Groupon to advertise their discounts compete in the same market as LV Skydiving. Because LV Skydiving and Groupon are not competitors in the allegedly restrained market, Groupon has not caused LV Skydiving antitrust injury under the Sherman Act. Consequently, I dismiss LV Skydiving's first and second causes of action with prejudice.

*Id*.  Upon Plaintiff's motion for reconsideration, this Court again held that Groupon and Plaintiff are simply *not competitors* where they do not offer interchangeable services:

> Consumers could not go to Groupon alone for tandem skydiving services because Groupon's role is limited to providing online discount certificates. Because what Groupon offers is not reasonably interchangeable with what LV Skydiving offers, they are not competitors. *See Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182-83 (3d Cir. 1997) (holding marketing company that participated in a program to supply vaccine to nursing homes was not a competitor of consultant pharmacists because without other members of the program, it could not supply vaccine).

> In its motion for reconsideration, LV Skydiving has not argued that it can show Groupon provides the relevant services. And LV Skydiving has not argued it can allege a different market in which both parties compete.

*See* ECF No. 55, at 3.  As such, the Court denied Plaintiff's motion for reconsideration.

This situation is a classic example of issue preclusion.  The same plaintiff is suing the same defendant over conduct occurring in the same market.  Indeed, the "Market" is alleged in both cases as "residents of and visitors to southern Nevada who wish to have the

11

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

experience of jumping out of an airplane while tethered to an experienced parachutist." *See* Initial Suit, ECF No. 1, at ¶ 11; this lawsuit, ECF No. 1, at ¶ 12.  Plaintiff had ample opportunity to litigate the issue, as it not only filed an opposition to Groupon's motion to dismiss, but a motion to reconsider the Court's order.[7]  Plaintiff was unable to convince the Court that it had any colorable antitrust claim.

This makes sense.  Groupon is *not* a competitor of Plaintiff.  Rather, Groupon's competitors are other websites that connect consumers with goods and services.  Groupon's competitors are not companies that offer skydiving services because Groupon, a website, cannot plausibly offer skydiving services.  Indeed, Plaintiff still alleges it directly provides skydiving services to consumers.  *See* Compl. at ¶ 11 (defining "Relevant Services").  Groupon does not.  Groupon provides a way for merchants to *advertise* skydiving services (among many other things).[8]  Nor could Groupon's alleged "partnership" with another website that **indisputably also does not provide skydiving services** change this analysis.  Although Plaintiff has attempted to broaden the definition of "Relevant Services" in the hopes of surviving a dismissal motion, this is inappropriate.  This Court dismissed **with prejudice**.  If Plaintiff were able to circumvent the with-prejudice dismissal for lack of antitrust standing merely by filing a new complaint that reframes the issue, it would make a mockery of this Court's order.  Plaintiff should be barred from relitigating this already-determined issue in the instant lawsuit.

/ / /

---

[7] Prior to dismissal, Plaintiff also had the opportunity to uncover evidence supporting its antitrust claims in discovery.  Unsurprisingly, it was unable to find anything to support its claims.

[8] Even assuming that both Plaintiff and Groupon sell "tickets" – Groupon by providing discount vouchers to all manner of activities actually provided by other businesses, and Plaintiff for its own skydiving services – this does not mean that Plaintiff has plausibly alleged that the relevant services defined by Plaintiff are "interchangeable" with the services provided by Groupon, as the law requires. *See San Francisco Comprehensive Tours, LLC v. Tripadvisor, LLC*, 2021 WL 4394253, at *7 (D. Nev. 2021) (dismissing on 12(b)(6) similar case where website defendants advertised and offered booking of services but "do not, and cannot, offer guided tours in the relevant market" like plaintiff) (relying upon *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1471).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**b.  *Even if This Court Does Not Apply Issue Preclusion to Bar the Claims, Plaintiff Still Lacks Antitrust Standing.***

Even if this Court does not apply issue preclusion to bar the claims, this Court should still dismiss the claims for lack of antitrust standing.  Before the merits of the antitrust claims can be evaluated, Plaintiff must demonstrate it has antitrust standing to pursue them. *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1007 (9th Cir. 2003) ("Only those who meet the requirements for antitrust standing may pursue a claim under the Clayton Act; and to acquire antitrust standing, a plaintiff must adequately allege and eventually prove antitrust injury."). Antitrust standing requires an actual "antitrust injury"—that is, injury of "the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489 (1977).[9]  As the Ninth Circuit articulated, "[t]he requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors." *Eagle v. Star–Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987). "In other words, the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Id*.

Here, LV Skydiving cannot demonstrate antitrust injury (and thus antitrust standing) because it does not compete with Groupon. Groupon is a website—it is not in the business of taking customers up in planes for tandem skydiving. This threshold fact dooms LV Skydiving's antitrust claims at the outset. *See In re Ins. Antitrust Litig.*, 938 F.2d 919, 926 (9th Cir. 1991) ("[A] plaintiff who is neither a competitor nor a consumer in the relevant market does not suffer 'antitrust injury.'").  Because LV Skydiving does not allege a valid antitrust injury, it does not have antitrust standing to pursue a private antitrust cause of action against Groupon. This Court need go no further to dismiss all of the antitrust claims with prejudice.

---

[9] The other factors for antitrust standing are (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages. *See Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 538–45 (1983). As all factors must be present, these need not be considered.

13

**2.      Plaintiff's Section 1 Claim Fails to State a Claim.**

Even putting aside Plaintiff's lack of antitrust standing, Plaintiff's Section 1 Claim still fails to state a claim.  To state a valid conspiracy claim under Section 1, Plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa*, 518 F.3d 1042, 1047 (9th Cir. 2008).  To allege such an agreement exists between co-conspirators the complaint needs to allege "a specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. 544, 597 n.10. The Ninth Circuit has made clear that "[a] bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily," and as such, more is required to state a claim. *Visa*, 518 F.3d at 1047.

A bare allegation of conspiracy is precisely what the complaint contains here. Plaintiff alleges that Groupon and its Groupon Partners are "competitors" and entered into the Groupon Partner Agreement, which constitutes an unreasonable restraint on trade. Compl. at ¶¶ 94–95. This argument fails for a host of reasons. First, as noted above, Groupon and Vegas Food and Fun are not competitors of Plaintiff. Neither Groupon nor Vegas Food and Fun provide skydiving services. Nor does Vegas Food and Fun offer discount vouchers for goods and services like Groupon—rather, Vegas Food and Fun is an online blog that links to Groupon.com, Vegas.com, Viator.com, and potentially other sites for customers to receive discounts for various activities and businesses around Las Vegas.[10]

Moreover, Plaintiff does not allege the existence of an agreement between Groupon and Vegas Food and Fun to restrain trade in violation of the Sherman Act. Plaintiff must plausibly allege that Groupon and Vegas Food and Fun conspired *against Plaintiff*. To do

---

[10] *See* www.vegasfoodandfun.com.

ACTIVE 62704758v3

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

so, Plaintiff must allege the who, what, where and when of the alleged conspiracy. *Twombly*, 550 U.S. at 1970, n.10. Instead, Plaintiff simply assumes that the Groupon Partner Agreement's prohibition on including Groupon Content in combination with any Groupon competitors' content includes Plaintiff's content.  *See* Compl., ¶ 88.  Plaintiff's theory relies on the warped, unsupported assumptions that either (1) Groupon specifically prohibited Vegas Food and Fun from linking to Plaintiff's website or (2) Vegas Food and Fun interpreted the Groupon Partner Agreement to mean it could not link to Plaintiff's website. Even taken as true, these allegations simply do not plausibly suggest that Groupon and Vegas Food and Fun specifically *agreed* to injure *Plaintiff's* business. Any inference that Vegas Food and Fun and Groupon "acted in concert does not rise above the speculative level." *MGM Resorts Int'l v. Pac. Pillows, LLC*, 2014 WL 2434628 at *2 (D. Nev. 2014). And certainly the allegations do not put Groupon on notice of the who, when, or where of the alleged agreement. At best, the allegations allege mere parallel conduct, which without more is insufficient to state a claim.  *See Twombly*, 550 U.S. at 556–57.

If anything, the Groupon Partner Agreement is akin to an exclusive contract or exclusive distributorship—which are not per se violations of the Sherman Act. *See Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71, 76 (9th Cir. 1969) (collecting cases); *see also Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 761 (1984) (explaining that a business "of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently."). Groupon and Vegas Food and Fun certainly have the right to deal, or refuse to deal, with anyone in the market, so long as they do so independently. *Id.* Here, there are no allegations at all to suggest that Groupon and Vegas Food and Fun *agreed* to refuse to deal with Plaintiff. For that reason, Plaintiff's Section 1 allegations fall woefully short.

### 3.    Plaintiff's Section 2 Claims Fail to State a Claim.

Additionally, Plaintiff's Section 2 Claims should be dismissed for failure to state a claim. The Complaint asserts two causes of action under Section 2 of the Sherman Act. *See* Compl. at ¶¶ 99–107 (styled "Monopolization under 15 U.S.C. § 2 (Exclusionary

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1   Conduct)") and ¶¶ 108–115 (styled "Monopolization under 15 U.S.C. § 2 (Pricing)").  Each

2   claim fails for several reasons, and the "pricing" cause of action fails for the additional

3   reason that Plaintiff has not pled pricing below cost.

### a. The Antitrust Claims Fail Because LV Skydiving has Not and Cannot Plead That Groupon is a Competitor Within the Relevant Market.

6       To state a valid monopolization claim under Section 2, Plaintiff must allege that

7   Groupon (1) possessed monopoly power in the relevant market; (2) the willful acquisition

8   or maintenance of that power and (3) antitrust injury.  *Name.Space, Inc. v. Internet Corp.*

9   *for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015).  "The gravamen of

10   a Section 2 claim is the deliberate use of market power *by a competitor*[.]" *Mercy-*

11   *Peninsula Ambulance, Inc. v. San Mateo Cty.*, 791 F.2d 755, 759 (9th Cir. 1986) (emphasis

12   added).  Where an antitrust defendant is *not* a competitor in the alleged market,[11] "they

13   cannot serve as the basis for a § 2 monopoly claim." *Name.Space*, 795 F.3d 1124 at 1131.

14   Courts reject the argument that "market power under Section 2 of the Sherman Act

15   encompasses 'influence' by a non-competitor over the relevant market." *Olde Monmouth*

16   *Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 392–93

17   (S.D.N.Y. 2007) (cited with approval in *Name.Space, Inc.*, 795 F.3d at 1131). The Supreme

18   Court has also cautioned that Section 2 liability should not be "undu[ly] expan[ded]" since

19   "[m]istaken inferences and resulting false condemnations 'are especially costly, because

20   they chill the very conduct the antitrust laws are designed to protect.'" *Verizon Commc'ns*

21   *Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 414 (2004) (quoting *Matsushita*

22   *Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 594 (1986).

23       Here, Plaintiff's monopolization claim fails to allege that Groupon is a competitor.

24   An antitrust defendant cannot monopolize a market in which it does not operate. *See*

---

[11] Nor does Plaintiff allege a product market, that is "the product at issue as well as *all economic substitutes* for the product" or a geographic market, where customers will turn for substitutes, with reasonable particularity. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (emphasis added) ("Antitrust law requires allegation of both a product market and a geographic market."). This is an additional, independent basis for dismissal.

ACTIVE 62704758v3

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069, 1075 (11th Cir. 2004) (cited with approval in *Name.Space, Inc.*, 795 F.3d at 1131) (plaintiff failed to state a Section 2 claim against owner of network of English-language radio stations where the plaintiff defined the market as the Spanish-language radio market); *see also Mercy-Peninsula Ambulance, Inc. v. San Mateo Cty.*, 791 F.2d 755, 759 (9th Cir. 1986) (affirming dismissal of an action brought by an ambulance operator against the county, because the county performs no health services and thus is not a competitor in the health care provision market). As discussed *supra*, a Court has already ruled as such. Even Plaintiff's new complaint it still does not plausibly allege that Groupon, a website, provides skydiving services. Accordingly, Groupon "cannot be charged with having used market position to exclude competition." *Mercy-Peninsula*, 791 F.2d at 759. To hold otherwise would turn antitrust law on its head and permit Section 2 liability against all third-party vendors or retailers that merely offer other parties' goods or services for sale to the public.

### b. Plaintiff has Not Alleged Market Power or Exclusionary Conduct by Groupon.

Putting aside that LV Skydiving's Section 2 claims fail because it is not a competitor, its Section 2 claims also fail because Plaintiff has not alleged that Groupon has monopoly power in the relevant market, let alone any improper acquisition or maintenance of monopoly power. As a threshold matter, Section 2 claims involve single firm conduct. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 (1984). Accordingly, only conduct on behalf of Groupon can be considered when analyzing this element of Plaintiff's claim. To that end, the allegations in Plaintiff's Complaint concern either (1) alleged conduct of Vegas Food and Fun having no bearing on the viability of Plaintiff's Section 2 claim as to *Groupon* (Compl. ¶ 102) or (2) the Groupon Partner Agreement. As explained *supra*, the Groupon Partner Agreement has no bearing on whether Vegas Food and Fun could include a link to Plaintiff's website because Plaintiff is not Groupon's competitor for antitrust purposes (as this Court has already twice held). The remaining allegations as to "exclusionary conduct" concern Vegas Food and Fun (Compl. at ¶ 102), and cannot serve as a basis for a monopolization claim against Groupon. In fact, Plaintiff's

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

17

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

allegations show Groupon does not have monopoly power at all—Plaintiff alleges the Vegas Food and Fun website lists "various businesses providing Relevant Services in the Market," which actually shows the competition for skydiving services is robust. *See* Compl., at ¶ 54; Plaintiff's Exhibit 4. Accordingly, LV Skydiving has not alleged a plausible Section 2 claim for "exclusionary conduct."

### c. The Fourth Cause of Action for "Pricing" Fails Because LV Skydiving has Not Alleged That Groupon is Pricing Below Cost.

LV Skydiving's Fourth Cause of Action for "Pricing," also fails for an additional reason: because Plaintiff has not alleged that Groupon is pricing competing skydiving services below cost.[12] Although vague, the Pricing claim appear to assert a "predatory pricing" theory against Groupon based on consumers' expectation for lower skydiving prices. But a valid predatory pricing claim requires allegations that (1) "the prices complained of are below an appropriate measure of [defendant's] costs" and (2) there is "a dangerous probability of [defendant] recouping its investment in below-cost prices" by raising prices after it has obtained monopoly power. *Brooke Group Ltd. v. Brown Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993). "Under Ninth Circuit authority, a failure to show price is below average variable or marginal cost is usually *fatal* to a predatory pricing claim." *Rebel Oil Co. v. Atl. Richfield Co*., 957 F. Supp. 1184, 1199 (D. Nev. 1997), aff'd, 146 F.3d 1088 (9th Cir. 1998) (emphasis added). "Price reductions that constitute a legitimate, competitive response to market conditions are *entirely proper*." *Inglis v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1031 (9th Cir. 1981) (emphasis added).

Here, as an initial matter, Groupon cannot possibly offer skydiving services "below cost," because, as discussed, Groupon **does not offer skydiving services**. Further, LV Skydiving fails to allege that Groupon's actions are stifling competition or harming consumers by undercutting legitimate prices. In fact, the only allegation concerning costs is that Groupon's activities are "effectuating the artificial depression of prices for the

---

[12] It is worth noting that this cause of action was previously dismissed. Plaintiff has resurrected this claim yet again this go around but asserts, at times verbatim, the allegations this Court already dismissed. This is patently improper.

Relevant Services in the Market." Compl. at ¶ 111. LV Skydiving fails to allege any average variable or marginal cost for skydiving services, nor does it allege Groupon causes pricing below either cost measure. Indeed, LV Skydiving does not even allege its own costs. To the contrary, LV Skydiving merely alleges that its competitors advertise discounts through Groupon, which in turn cause consumers to expect lower prices for skydiving, which in turn make it more difficult for LV Skydiving to profit. This alleged harm, even if true, is the result of a properly functioning competitive market, not predatory pricing. Therefore the Fourth Cause of Action must be dismissed.

Plaintiff's attempt to get around the Court's prior ruling dismissing its Section 2 claim against Groupon is unavailing—Plaintiff still does not allege a plausible monopolization claim.

**B.** **Plaintiff's Trademark Infringement and State Law Causes of Action Fail to State a Claim.**

Plaintiff also seeks to add a trademark infringement claim based upon Vegas Food and Fun's use of the FYROSITY mark in its review of Skydive Fyrosity on its website. Likewise, Plaintiff seeks to add a "misappropriation" and unjust enrichment claim based on the same facts. These claims are specious.

**1.** **Plaintiff's Trademark Infringement Claim Fails.**

Plaintiff's trademark infringement claim fails spectacularly. Foremost, what Plaintiff alleges is trademark infringement is an obvious fair use – it is plainly permissible for websites to review products and services by name. But even if it somehow was not a fair use, Plaintiff's claim would still fail because it has not alleged any facts in support of the primary element of a trademark infringement claim: likelihood of confusion. As such, this Court should dismiss Plaintiff's trademark infringement claim.

*a. Vegas Food and Fun's Use of "Fyrosity" is Fair Use.*

Vegas Food and Fun's use of "Fyrosity" is a paradigmatic example of "fair use" in trademark law, and is thus not actionable. Use of a trademarked term to refer to the trademark owner's product or service by that name is permitted under the law, and is not

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

considered a trademark use of the term. As the Ninth Circuit has explained, "it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark." *New Kids on the Block v. News Am. Publ'g, Inc*., 971 F.2d 302, 306-07 (9th Cir. 1992).  The *New Kids* court explained although one could refer to "the professional basketball team from Chicago," it is simpler to say "the Chicago Bulls," and this is permissible because such a use "does not imply sponsorship or endorsement of the product, because the mark is used only to describe the thing, rather than to identify the source." *Id*.  Indeed, the court cautioned, "[m]uch useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark." *Id*.; *see also* J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:148.

The same is true on websites; the Ninth Circuit has squarely rejected the idea that use of another's trademark on a website in a non-misleading fashion is actionable under the Lanham Act.  *See Toyota*, *Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176-79 (9th Cir. 2010) (rejecting injunction prohibiting a broker's use of the LEXUS trademark in a domain name, noting that domain names may contain another's trademark without running afoul of the Lanham Act, and that www.lexus-broker.com was "the most straightforward, obvious and truthful way to describe their business"); *Playboy Enters. v. Welles*, 279 F.3d 796, 801-02 (9th Cir. 2002), *superseded by statute on other grounds* (use of PLAYBOY, PLAYMATE, and other trademarked terms not infringing when used to accurately describe a former Playmate of the Year).

This truthful, non-misleading use of another's trademark is called "nominative fair use," and is appropriate for disposition under the motion to dismiss standard. *See, e.g.*, *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 887 (9th Cir. 2019) (affirming 12(b)(6) dismissal based on nominative fair use); *Beachbody, LLC v. Universal Nutrients, LLC*, 2016 U.S. Dist. LEXIS 94097, at *6-7 (C.D. Cal., 2016) (where plaintiff did not allege sufficient facts to defeat the defendants' assertion of nominative fair use, trademark

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

20

infringement claim dismissed); *Adaptive Mktg. LLC v. Girard Gibbs LLP*, 2009 U.S. Dist. LEXIS 131474, at *14 (C.D. Cal. 2009) (dismissing on the basis of nominative fair use).

To evaluate nominative fair use, courts look at "whether (1) the product was 'readily identifiable' without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder." *Toyota*, 610 F.3d 1171, 1175-76 (citing *Welles*, 279 F.3d 796, 801). Importantly, the ***burden is on the plaintiff*** to demonstrate that nominative fair use does ***not*** apply. *Id*. at 1182. The nominative fair use analysis replaces the traditional likelihood of confusion factors. *Id*.

Here, as Plaintiff's Exhibit 4 and the Vegas Food and Fun website demonstrate, the Vegas Food and Fun website provides information and reviews of various Las Vegas attractions. It includes reference to "Fyrosity" only in that capacity. Vegas Food and Fun used "Skydive Fyrosity" in its article on skydiving options in Las Vegas to identify and distinguish Plaintiff's business from the others it was reviewing, and Vegas Food and Fun used no more of the mark than is necessary (i.e., it did not use a distinctive font). *See, e.g.*, *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003), *impliedly overruled on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) (where it was "virtually impossible to refer to the Beach Boys without using the trademark," and where the plaintiff did not allege that the defendant used any distinctive logo, phrase, or anything else not needed to identify the Beach Boys, first and second elements were met). Finally, Vegas Food and Fun did not falsely suggest that its website was sponsored or endorsed by Plaintiff; the website reviews several different skydiving companies, using each business name in the same manner, which further cuts against the false impression of endorsement by any one of these entities. If anything, consumers would be *less likely* to think that Vegas Food and Fun was sponsored by Plaintiff than other businesses, because there is no link to Plaintiff's website or a deal. Indeed, Vegas Food and Fun reviews hundreds upon hundreds of businesses and venues on its website.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

21

The internet would be a very different place if websites could not review and compare movies, books, restaurants, or other businesses by accurately referring to them by name.  This is a clear-cut case of nominative fair use, and this claim should be dismissed with prejudice.  *Ayse Sen v. Amazon.com, Inc.*, 793 F.App'x 626, 626 (9th Cir. 2020) (affirming summary judgment on Lanham Act claims based on third-party review posted on defendant's website under nominative fair use).

### b.  *Plaintiff has Failed to Plead Likelihood of Confusion.*

Further, even if this was not a black-letter example of fair use, Plaintiff's claim would still fail because it has not alleged the most basic elements of trademark infringement.  Despite the fact that the *sine que non* of a trademark infringement claim is likelihood of confusion by consumers as to the source of goods or services, Plaintiff makes no allegation whatsoever as to how consumers would be likely to be confused as to source based on the presence of the term "Skydive Fyrosity" in a review on the Vegas Food and Fun website.  "[C]onclusory allegations of a likelihood of confusion pose no exception to [the requirements of *Iqbal*/*Twombly*]."  *See Performance Designed Prods. LLC v. Plantronics, Inc.*, 2019 U.S. Dist. LEXIS 117556, at *8 (S.D. Cal. 2019) (dismissing complaint for failure to sufficiently allege likelihood of confusion in trademark action).  Plaintiff's unadorned statement that "The Mark Infringement is likely to cause confusion, cause mistake, or deceive consumers and the public with respect to the services offered in commerce by the Groupon/VFF Partnership" is plainly insufficient.  Indeed, Plaintiff could never make such a showing: hundreds of marks for various goods and services are used in reviews on the Vegas Food and Fun site.  Plaintiff's purported new trademark claim is frivolous, and its conclusory allegations do not state a claim for trademark infringement.

### 2.  Plaintiff's Misappropriation of Commercial Properties Claim Fails.

Likewise, Plaintiff's misappropriation claim fails.[13]  The only property or "thing" that the "Groupon/VFF partnership" is alleged to have misappropriated is Plaintiff's

---

[13] This Court previously held that although Nevada had not recognized this claim, the Nevada Supreme Court would likely follow California law in recognizing this tort.  *See* Initial Suit, ECF

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Fyrosity trademark, by Vegas Food and Fun's inclusion of the term "Skydive Fyrosity" in the review on its website.  *See* Compl., at ¶ 120 ("The Groupon/VFF Partnership misappropriated LV Skydiving's Commercial Property by using LV Skydiving's Mark for the Groupon/VFF Partnership's enrichment without appropriately compensating LV Skydiving.")

As explained in Groupon's motion for summary judgment (Initial Suit, ECF No. 91), California courts addressing this claim have held that misappropriation does not apply to situations where the only "property" misappropriated is a trademark.  *See Bell v. Harley Davidson Motor Co*., 539 F. Supp. 2d 1249, 1256, 1262 (S.D. Cal. 2008) ("Black-letter law holds that California's common-law doctrine of misappropriation *does not extend to trademark infringement claims*" and granting the defendant's motion for summary judgment) (emphasis added).[14]  Indeed, Plaintiff did not oppose summary judgment as to this claim in the Initial Suit.  Plaintiff's misappropriation of commercial properties claim cannot stand.

### 3.    Plaintiff's Unjust Enrichment Claim Fails.

Finally, Plaintiff's unjust enrichment claim fails to state a claim.  "A claim for unjust enrichment requires that Plaintiff conferred a benefit on the defendant."  *See SHC Holdings v. V.*, 2020 U.S. Dist. LEXIS 47391, at *13 (D. Nev. Mar. 19, 2020), *citing Chemeon Surface Tech., LLC v. Metalast Intl., Inc.*, 312 F. Supp. 3d 944, 956 (D. Nev. 2018).  Here, Plaintiff has not alleged that it conferred a benefit on Groupon or VFF.  Even where a

---

No. 30, Order on Motion to Dismiss, at 7-8. Under California law, a plaintiff must show that "(a) the plaintiff invested substantial time, skill or money in developing its property; (b) the defendant appropriated and used the plaintiff's property at little or no cost to the defendant; (c) the defendant's appropriation and use of the plaintiff's property was without the authorization or consent of the plaintiff; and (d) the plaintiff can establish that it has been injured by the defendant's conduct." *See id., citing Salestraq Am., LLC v. Zyskowski*, 2009 WL 1652170, at *3 (D. Nev. 2009), aff'd, 334 F. App'x 125 (9th Cir. 2009).

[14] *See also Toho Co. v. Sears Roebuck & Co.*, 645 F.2d. 788, 793 (9th Cir. 1981) (predicting that the California courts would not extend the doctrine to the trademark context); *Caiz v. Roberts*, 382 F. Supp. 3d 942, 953 (C.D. Cal. 2019) (granting summary judgment in defendants' favor as to misappropriation for the same reason); *Sykes Laboratory, Inc. v. Kalvin*, 610 F. Supp. 849, 855-56 (C.D. Cal. 1985) (same) (superseded by statute on other grounds).

defendant is alleged to have "nefariously acquired Plaintiff's intellectual property," where "there is no evidence that Plaintiff conferred that property on Defendant as required by a claim for unjust enrichment," dismissal is appropriate.  *Id*.  Likewise, where a claim of unjust enrichment is based on unauthorized use of intellectual property, but the plaintiff has not shown that any such use was unlawful, the claim fails.  *See K & K Prods. v. Walt Disney Studios Motion Pictures*, 2021 U.S. Dist. LEXIS 182012, at \*22 (D. Nev. 2021). Such is the case here, and this claim must be dismissed.

## IV.   CONCLUSION

In light of the foregoing, Groupon respectfully requests that this Court DISMISS Plaintiff's complaint with prejudice.

DATED this 23rd day of February, 2022.

**GREENBERG TRAURIG, LLP**

*/s/ Tyler R. Andrews*
MARK E. FERRARIO
TYLER R. ANDREWS
*Counsel for Defendant Groupon, Inc.*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 23rd day of February, 2022, a true and correct copy of the foregoing ***Defendant Groupon, Inc.'s Motion to Dismiss*** was filed electronically via the Court's CM/ECF system.  Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

*/s/ Andrea Lee Rosehill*
An employee of GREENBERG TRAURIG, LLP

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

ACTIVE 62704758v3